## KEANE v. DIAMOND MILLS PAPER CO.

District Court, S. D. New York.   June 6, 1929.

William F. Purdy, of New York City (Frank C. Mason, of New York City, of counsel), for libelant.

Hunt, Hill & Betts, of New York City (Geo. Whitefield Betts, of New York City, of counsel), for respondent.

COXE, District Judge. At about 4:30 a. m. on November 27, 1926, the coal barge, Thomas F. Keane, with a load of 585 tons of coal, and drawing 10½ feet of water astern, was left by a Cornell tug at flood tide alongside the private dock of the Diamond Mills Paper Company in Esopus creek, Saugerties, N. Y., at a point which was inaccessible to the coal bin on the dock, and where there was a soft muddy bottom and 8½ feet at water at low tide. The coal was destined for the Cantine Paper Company, whose plant was about 600 feet further up the creek, and the barge was brought to the dock by mistake, without the request or permission of the Diamond Company. The captain of the Keane had no bill of lading, and did not even know where he was bound. At about 8 a. m. on the day of the barge's arrival, the engineer of the Diamond Company, who had charge of the plant, came down to the dock and inquired of the captain if he had any bill of lading, and to whom the coal was consigned. He testified that he understood the captain to say that the coal was for the Diamond Company. This the captain of the Keane denied, but he admitted that he had no idea where the coal was going.

There was a sign on the dock containing in large letters a notice that the dock was the private property of the Diamond Company. The Diamond Company was, in fact, expecting a cargo of coal at the time, and the engineer, acting upon a mistaken notion that the coal was intended for his company, gave instructions to the McNally Company, which company had for years done the unloading for the Diamond Company, to take charge of the unloading. The McNally Company thereupon at full high tide pivoted the barge around in the creek, bringing the stern nearer to the coal bin, in order to make the derrick on the dock available for use in unloading the coal. The captain of the Keane testified that in swinging the barge around

she grounded at the stern, and that when the tide fell she became so badly twisted he was unable to close the cabin door, and was forced to pump a number of hours each day following in order to keep the boat free from water. When the barge had been brought close to the coal bin, the McNally Company unloaded from 50 to 60 tons of coal, after which it was discovered that the shipment did not belong to the Diamond Company but to the Cantine Company.

There was testimony to the effect that the McNally Company was an independent contractor, but inasmuch as the engineer for the Diamond Company was present, and gave instructions regarding the unloading, I think that the Diamond Company must accept the responsibility for whatever action was taken by the McNally Company. The Keane remained at the Diamond Company's dock for nearly six days, and was then towed to the Cantine dock and unloaded. While there, she was frozen in, and did not leave until December 6th following. It was testified by an employé of the Cantine Company that there was only 6½ feet of water at low tide at the Cantine dock, and that the Keane grounded at every low tide during the time she was there. It was also shown that it was well known that there was comparatively shallow water alongside the Diamond Company's dock, and that coal companies were advised to that effect when orders were placed for coal. The captain of the Keane testified, however, that he had never been in Esopus creek before, and had no knowledge of the conditions alongside the Diamond Company's dock. It was also testified that the Diamond Company had unloaded without difficulty at least 15 barges each year for many years at this same dock.

In February, 1926, the Keane was injured in a collision with a dredge in the East River, and drifted on the rocks, where she pounded for a number of hours, sustaining a surveyed damage of $1,200. It was insisted, however, that the barge was in good condition prior to her arrival at the Diamond Company's dock, and that the damage forming the basis of the claim in the present suit was due solely to the manner in which the barge was handled by the Diamond Company.

The dock of the Diamond Company was private property, and the Keane was a trespasser. There was no duty to provide her with a berth, as the Diamond Company had no notice of her coming, and was in no way interested in the cargo. It is urged, however, that the status of the barge changed when the Diamond Company's engineer gave instructions to unload the coal and undertook to direct the unloading movements; the argument being that the Diamond Company thereupon voluntarily assumed the position of a consignee with its attendant duties and responsibilities. The difficulty with this contention is that the Diamond Company never knowingly consented to accept the coal, but was completely misled by the conduct of the captain of the Keane with respect to the destination of the cargo. It is not enough for the captain of the Keane to say that he had no idea to whom the coal was consigned. It was his duty to know where he was bound, and he should not be permitted to stand idly by and see his barge moved, and partially unloaded, and then insist afterwards that the action so taken with his approval and encouragement was unjustified and improper. It is, of course, true that the barge was in no sense an outlaw [The Chancellor (C. C. A.) 30 F.(2d) 227], but it does not at all follow that the Diamond Company was, under the circumstances, charged with the responsibility of finding a berth with sufficient water to keep her from grounding at low tide.

I do not think either that the barge was carelessly handled in the moving operation. She was turned around at full high tide, and, even if she grounded, I do not believe the testimony fairly supports the contention that she was damaged in the movement. At no point alongside the dock was there sufficient water to keep her afloat at low tide, and her position was fully as good after she had been turned around as it was before. The bottom in both positions was soft mud and pulp, without any obstruction or unevenness, and whatever danger there was of grounding on such a bottom was a hazard which the barge brought on itself. Furthermore, I seriously doubt the testimony that the barge was injured at the Diamond Company's dock, especially as it was undisputed that she had been badly damaged in 1926, and grounded at every low tide during the time she was at the Cantine dock.

I therefore direct that the libel be dismissed, with costs.